UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GREGORY SAXON,

                      Plaintiff,

            -vs-                                  13-CV-165-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                      Defendant.

---

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (KENNETH R. HILLER, ESQ.) Amherst, New York, for Plaintiff.

                           WILLIAM J. HOCHUL, JR., United States Attorney (RICHARD D. KAUFMAN, Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

## INTRODUCTION

This matter has been transferred to the undersigned for all further proceedings, by order of United States District Judge William M. Skretny dated April 23, 2015 (Item 17).

Plaintiff Gregory Saxon initiated this action on February 14, 2013 pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 8, 10). For the following reasons, plaintiff's motion is DENIED, and the Commissioner's motion is GRANTED.

## BACKGROUND

Plaintiff was born on April 3, 1953 (Tr. 133).[1] He protectively filed an application for SSI benefits on September 28, 2009, alleging disability due to psychotic disorder and depression, with an onset date of November 15, 2007 (Tr. 133, 146). The application was denied administratively on December 22, 2009 (Tr. 81-84). Plaintiff then requested a hearing, which was held on April 20, 2011, before Administrative Law Judge ("ALJ") Bruce R. Mazzarella (Tr. 29-76). Plaintiff appeared and testified at the hearing, and was represented by counsel. A vocational expert ("VE") also appeared and testified.

On May 10, 2011, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 14-25). Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (depression, anxiety, psychotic disorder, and polysubstance abuse in remission) while "severe," did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 16-18). The ALJ discussed the evidence in the record, including medical records, reports from treating and consultative medical sources, and plaintiff's hearing testimony, and determined that plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the non-exertional limitation that plaintiff is limited to simple, repetitive, routine tasks in a low contact, low stress environment (Tr. 18-23). Relying on the VE's testimony, the ALJ determined that plaintiff

---

[1] Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the Answer to the Complaint (Item 7) in this action.

was capable of performing work that exists in significant numbers in the national economy and thus has not been disabled within the meaning of the Act at any time since the application was filed (Tr. 24).

The ALJ's decision became the final decision of the Commissioner on December 21, 2012, when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because (1) the RFC determination was not based on substantial evidence, and (2) the ALJ erred in relying on the VE's testimony. *See* Items 10-1, 16. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence. *See* Item 8-1, 14.

## DISCUSSION

**I.    Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from

the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).  Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); see Kohler, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. See Marquez v. Colvin, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing DeChirico v. Callahan, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." Carroll v. Sec'y of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1983); cf. Cichocki v. Astrue, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," Veino, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994).

**II.     Standards for Determining Eligibility for Disability Benefits**

To be eligible for SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 1382c(a)(3)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. § 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§ 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. § 416.920(a)(4)(ii); *see also* § 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. *See*

20 C.F.R. § 416.920(a)(4)(iv). If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008); 20 C.F.R. § 416.920(a)(4)(v).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III.     The ALJ's Disability Determination

In this case, ALJ Mazzarella determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since September 10, 2009, the application date (Tr. 16). At steps two and three, as indicated above, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals the severity of any of the impairments in the Listings (Tr. 16-18).

At step four, the ALJ discussed the medical evidence of record, including plaintiff's history of substance abuse and psychiatric issues. He found that while plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, his statements concerning the intensity, persistence, and limiting effects of these symptoms were "not credible to the extent they are inconsistent with" the ALJ's RFC assessment (Tr. 19). As for the opinion evidence, the ALJ afforded significant weight to the opinion of psychiatric consultative examiner Thomas Ryan, Ph.D. and consultative internal medicine examiner Dr. Cindrea Bender, M.D., some weight to the opinion of state review psychologist C. Butensky, and little weight to the opinion of treating social worker Alicia Sholtz, MSW (Tr. 22-23). Dr. Ryan found that plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, and maintain attention and concentration. Dr. Ryan found moderate impairment in plaintiff's ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal appropriately with stress (Tr. 21).

Based on his review of the evidence, the ALJ found that plaintiff has the RFC to perform a full range of work at all exertional levels with the following non-exertional

limitations: plaintiff can perform simple, repetitive, and routine tasks, in a low contact, low stress environment (Tr. 18). Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative occupations such as Fruit Cutter, Line Packer, and Cleaner (Tr. 24).

## IV.     Plaintiff's Motion

### A.  The RFC Determination

Plaintiff argues that the ALJ's RFC determination is not based on substantial evidence in that the ALJ did not make specific findings regarding plaintiff's non-exertional limitations.  He also argues that the ALJ improperly weighed the opinion of plaintiff's treating social worker.

In this case, the ALJ afforded significant weight to the opinion of the consultative psychiatric examiner.  Dr. Ryan found plaintiff's thought processes to be coherent and goal directed.  There was no evidence of hallucinations, paranoia, or delusions (Tr. 308). Plaintiff's attention, concentration, and memory were intact, although his cognitive functioning appeared to be below average (Tr. 309).  Dr. Ryan found no significant limitation in plaintiff's ability to follow simple instructions, perform simple tasks, maintain attention and concentration, and follow a regular schedule. He noted mild to moderate limitation in plaintiff's ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress (Tr. 309). Additionally, the ALJ relied on the Psychiatric Review Technique ("PRT") and Mental Residual Functional Capacity Assessment ("MRFCA") of state review psychologist C. Butensky (Tr. 315-332). Dr. Butensky found that plaintiff retains the capacity to perform simple work tasks, sustain

attention and concentration for simple tasks, and has mild to moderate limitations in his ability to interact appropriately with coworkers and supervisors and adapt to changes in a routine work setting (Tr. 328). The ALJ incorporated these opinions in his RFC determination, finding that plaintiff could perform a full range of work at all exertional levels, but is limited to simple, repetitive, routine tasks in a low contact, low stress environment (Tr. 18).

In determining a plaintiff's RFC, the ALJ must identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including mental capabilities such as understanding, remembering, carrying out instructions, and responding appropriately to supervision. *See* Social Security Ruling 96-8p, 1996 WL 374184 (S.S.A. 1996); 20 C.F.R. §§ 404.1545, 416.945. However, an explicit function-by-function analysis is not required. "Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous," remand is not necessary. *Cichocki v. Astrue,* 729 F.3d 172, 177 (2d Cir. 2013) ("The relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence.").

The RFC assessment and the determination of some non-exertional limitations are consistent with the plaintiff's medical records from Horizon Health Services. Those records indicate that plaintiff functions fairly well as long as he maintains his treatment regimen and takes his medications. Plaintiff's Global Assessment of Functioning ("GAF") scores ranged from 47 on May 21, 2009 (TR. 243), to 65 on July 21, 2009 (Tr. 284), and 55 on February

7, 2011 (Tr. 385).[2] Additionally, the ALJ noted that plaintiff attends Narcotics Anonymous ("NA") meetings and acts a sponsor to another individual at NA, suggesting his ability to maintain a certain level of responsibility and interaction with others (Tr. 22). The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress. These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment. Accordingly, the court finds that the ALJ properly considered the evidence and provided an adequate explanation for his RFC determination.

Additionally, the ALJ properly considered the opinion of plaintiff's counselor, Alicia Sholtz, MSW. On January 7, 2010, Ms. Sholtz completed a Mental Residual Functional Capacity Questionnaire in which she opined that plaintiff is unable to engage in full-time competitive employment (Tr. 350). She stated that plaintiff's mental impairments would cause him to be absent from work more than four days per month and that he is seriously limited in his ability to maintain pace and attention, maintain regular attendance, sustain an ordinary routine, and work in proximity to others (Tr. 349).

An ALJ should consider "all medical opinions received regarding the claimant." *See Speilberg v. Barnhart*, 367 F.Supp.2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)). In evaluating medical opinions, regardless of their source, the ALJ should consider the following factors: (1) the frequency of examination and length, nature, and

---

[2] A GAF score of 41 to 50 indicates "serious symptomology or impairment in functioning," a score of 51 to 60 indicates moderate symptoms or generally functioning with some difficulty, and a score of 61 to 70 indicates mild symptoms but "generally functioning pretty well" (Tr. 235).

extent of the treatment relationship; (2) the evidence in support of the physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) whatever other factors tend to support or contradict the opinion. *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see Speilberg v. Barnhart,* 367 F.Supp.2d at 281 ("factors are also to be considered with regard to non-treating sources, state agency consultants, and medical experts") (citing 20 C.F.R. §§ 404.1527(d) and (e)); *House v. Astrue*, 2013 WL 422058, *3 (N.D.N.Y. Feb 1, 2013) ("[m]edical opinions, regardless of the source are evaluated considering several factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c)").

Licensed clinical social workers are not considered "acceptable medical sources" under the regulations. 20 C.F.R. §§ 404.1513(a), 416.913(a). Instead, clinical social workers are considered to be "other sources" within the meaning of 20 C.F.R. §§ 404.1513(d) and 416.913(d). As such, their opinions "cannot establish the existence of a medically determinable impairment." *See* SSR 06–03P, 2006 WL 2329939, *2 (2006). Their opinions may be used, however, "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* "An ALJ is not required to give controlling weight to a social worker's opinion; although he is not entitled to disregard it altogether, he may use his discretion to determine the appropriate weight." *Cordero v. Astrue*, 2013 WL 3879727, *3 (S.D.N.Y. July 29, 2013); *Jones v. Astrue*, 2012 WL 1605566, *5 (N.D.N.Y. Apr. 17, 2012), *Report and Recommendation adopted by* 2012 WL 1605593 (N.D.N.Y. May 8, 2012) ("the Second Circuit has held that 'the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based

on all the evidence before him") (quoting *Diaz v. Shalala*, 59 F.3d 307, 313–14 (2d Cir.1995)).

Here, the ALJ acknowledged the length and frequency of the treating relationship between plaintiff and Ms. Sholtz, a licensed social worker. He noted Ms. Sholtz's findings that plaintiff is stable while on medication and her inaccurate statement that plaintiff had not had a GAF score over 50 in the past year. The ALJ concluded that Ms. Sholtz's opinion, that plaintiff is unable to sustain employment, is inconsistent with the findings of other acceptable medical sources. Accordingly, the court finds that the ALJ adequately considered the opinion of Ms. Sholtz. The RFC is based on substantial evidence, and no remand is required.

### B. Reliance on the VE's Testimony

Additionally, plaintiff argues that the VE's testimony was based on an erroneous RFC. As the court has determined that the RFC was based on substantial evidence, this argument is without merit and need not be addressed further.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 10) is denied, the defendant's motion for judgment on the pleadings (Item 8) is granted, and the case is dismissed. The Clerk of the Court is directed to close this case.

So ordered.

        \_\_\_\_\_\s\ John T. Curtin_____
        JOHN T. CURTIN
        United States District Judge


Dated: June 25, 2015